Under the U.S. Attorney's supervision, an Italian prosecution team undisputedly reviewed Agrama's privileged materials during a search that the district court called unlawful, unreprehensible. Yeah, but aren't we way beyond that at this point? Isn't the issue in front of us now whether your client should respond to a subpoena for documents? That is the issue. Then what happened in the search in connection with the search has nothing to do with this. The IRS wasn't involved in the search, was it? No. Correct, okay. So can you get to the issue that's really here? Yeah, this is the heart of the issue. The issue is that the search happened. They viewed privileged materials which were pertinent to their investigation of Agrama, educated by that information. They prepared the Corsicla report. The Corsicla report was obtained by the IRS in violation of the U.S. Tax Treaty and the MLATs. The IRS has used that report to structure its investigation. It has issued penalties based on that report, and it's now seeking documents based on that report. It wants the rest of that report. That all stems from that initial unconstitutional search and the unconstitutional review. So you speculate. You have no evidence whatsoever to support a single one of those factual assertions. Not one. The evidence that we... I mean, we do have evidence. We don't have conclusive evidence, but we're not required to have conclusive evidence under Clark. We're required to have a minimum of evidence that plausibly suggests that there is a connection between the violation. What is the evidence that plausibly suggests that an FBI search that Judge Pragerson quashed as illegal in 2007 has anything to do with the current subpoena? The amount of time that has elapsed is really irrelevant here. What matters is that they saw privileged material that were about the very subject of the Kurcykla report and is about the very subject of the IRS investigation now. Was there not a six-year... Let's assume that the first prong of your argument is correct, which I'm not prepared to concede, but is it not the case that you have absolutely no evidence that Klariska, if I'm pronouncing it correctly, ever saw any privileged materials while preparing his report? No. It's conceded that she and the lead prosecutor, Fabio De Pasquale, and the third Italian prosecutor, that they saw and reviewed privileged materials at Mr. Ograma's office. That is conceded. The U.S. Attorney's Office conceded it. The district court found it. There's no question about it. There's also no question that the IRS has issued penalties to Ograma based on the report. The IRS agent admitted it, and we've pointed that out in this proceeding, and the government has not denied that. So there is the evidentiary foundation to believe that the Italians viewed the privileged materials, used it to make the report, and the report has informed what the IRS is doing. The summons itself stemmed from the report. The summons is about getting MLAT documents, and specifically the attachments to the Kersicka report. The IRS wouldn't even be seeking these documents if it didn't have the Kersicka report. Can I ask you about the third Powell factor here? Yes. If I look at the Ninth Circuit cases, Luther, Liberty Financial Services, and Action Recycling, they seem to support actually affirming the district court. They say if the IRS already has corporation records from, you know, state corporation documents, or banks, or W-2s, they can still seek a summons for those original same documents. Liberty Financial says if the IRS could get the documents because they need to determine whether they have all the documents, whether the documents they have are accurate. Action Recycling says the IRS review of records doesn't automatically give the IRS permanent possession of the records, so they can still summons them even though they've reviewed them previously. So I guess my question for you is, in these tax fraud cases where knowledge and intent is so critical, why shouldn't the government be able to get the original documents in the taxpayer's possession for accuracy, for completeness, to see whether there have been any falsifications, or variations, or different versions, or to confirm that they're in the taxpayer's possession? So Mr. Ograma doesn't have the original documents. He has what the Italian government gave him. The IRS is not going to the original source, Italy, because they're prohibited from doing it by the MLATs. Those cases, I think, acknowledge a few circumstances that are not present here. Where the IRS looked at information, but no longer has the documents, so it doesn't possess them anymore. And that is not the circumstance here. The IRS possesses documents that it is summoning. Where the IRS... Its response to why it's still acting in good faith is that it's not sure if it has the accurate documents, the complete documents, all the documents, and it needs to look at that. Isn't that in your client's interest as well, to make sure everybody's operating from the same set of documents? I think the IRS, and what I think these cases also reflect, is that the IRS has to show, in a particularized way, the need for the duplicative document. In some of those cases, it had certain records that did not... Can you answer my question? Because I'm sorry, I apologize. I'd like him to answer my question. Go ahead. Some of the documents that were in those cases were ones from which the IRS might potentially have been able to infer some of the information it was looking for, but if it did that, it would be error-prone, incomplete, highly unreliable. So there was a particularized need to get those documents. The IRS here has not articulated that. It's just asserting a generalized interest in obtaining duplicative records because it wants to say, then it will know it has a complete and accurate set. If that were permissible under Powell, the not-already-possessed element would be meaningless. There would never be a circumstance in which the IRS couldn't say, well, we need these even though we already have them because we want to just assure ourselves that they're not duplicative. The only time that would end up mattering is if it were actually from the same source in a repetitive way, and in which case it would be harassment. And that would be a separate basis under Powell to invalidate the summons anyway. We don't need that from the not-already-possessed factor. For that to do any work, it has to mean, if the IRS has the documents and can't explain why it thinks what it has is incomplete or inaccurate, it can't get them again just because it turns to another source. But the, I'm sorry, go ahead. But has your client ever directly turned over these documents to the IRS? I'm sorry, I don't think I caught your question. Has your client ever produced these documents to the IRS? Not the ones that we're fighting about. My client has produced other documents that are formally within the scope of the summons, but the IRS has said that they're not asking for the reproduction of those documents. Go ahead, Judge McMahon. Well, that partly answers my question. You agree that the words document and information are not synonymous, right? I do. And the third Powell factor refers to information and not documents. I think the court has used both terms. I'm not sure the court has really set a rule about one or the other. But the Supreme Court in Clark, Justice Kagan, made it pretty clear that the IRS has to make not the huge evidentiary showing that you contend, but a very minimal showing. It's the reverse. It's that we have to make a minimal showing to get the hearing. That's what Clark is about. No, I think not. In Clark, the taxpayer didn't get a hearing. But the standard adopted in Clark is that the taxpayer need only show a minimum of evidence from which to plausibly infer bad faith. The IRS has a prima facie burden of showing it doesn't already possess the documents, which, by the way, the IRS admits it fails. The IRS admits it has the documents it's summoning, and therefore it doesn't even satisfy the prima facie requirement of the Powell factor. Only if you think that documents are synonymous with information. But the IRS has not explained what information, in any particularized way, it's just asserted this generalized interest. I'd like to reserve that. I think that you're saying the reverse. Look at Liberty Financial. To establish a need for judicial enforcement, the showing need only be minimal. This is necessarily true because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted. And they say that the assertions by the affidavit of the investigating agent are sufficient. The burden then shifts to the taxpayer to show an abusive process. The burden is a heavy one. So I think you're sort of reversing how the different burdens are described. If the government's burden is minimal, it's a heavy burden to show the summons was issued in bad faith for an improper purpose. And you can see that at least the 250 exhibits to the Church-Ficlo report, the IRS does not have, right? I think we could concede that they don't have those attachments. But Liberty is issued long before Clark. And Clark is about the standard for a hearing, not about the standard to deny enforcement. And I want to just impress upon the court that we have requested a hearing, not just denial. And that's a lower standard for us to meet. I will give you some time to rebut because our questions took up your time. Thank you. Thank you. May it please the court, my name is Ivan Dale on behalf of the FLE United States in this matter. The investigation that gave rise to this proceeding began when Frank Agrama asked to participate in the Offshore Voluntary Disclosure Program. That's an IRS program where taxpayers who had previously failed to disclose offshore accounts or income from those accounts could avoid penalties or prosecution by in effect coming clean and reporting the accounts and paying back taxes. Participation in that program automatically triggers an examination into the tax liabilities and issue. So what you're saying is that the whole 2007 thing with the FBI, which didn't involve the IRS, had nothing to do with the initiation of your investigation into this taxpayer? There's no doubt that the examination would have started no matter what happened in 2006. During that audit, the IRS learned that Mr. Agrama had failed to disclose, even though he was required to, that he was the defendant in two criminal tax evasion trials in Italy and in fact was convicted in one. So naturally the IRS would want to ask about information relating to those two particular trials and that's what the summons asked for. It asked for trial exhibits, expert reports, deposition, testimony that was admitted into, that is part, related to those proceedings. And that happened, I mean, so the IRS arrives at that completely independently and doesn't learn about these 2006, this 2006 search until later when it contacts Mr. Agrama and asks for the documents. So what, precisely what information are you looking for that you don't already, information, I didn't say documents, I said information, what information are you looking for that you don't have already? Right, well, so the IRS is looking for a complete set of documents that relate to those two trials as well as to a proceeding, a related proceeding in Ireland. And what's a complete set of those documents? It knows it doesn't have a complete set of the documents. It knows it does have some documents, for instance, this report, but not the attachments. It does have some other documents. But, you know, the point of the already-possessed requirement is simply to protect taxpayers against unnecessary examinations. And we've made the showing that it's necessary for us to have a complete set. The alternative to propose, I mean, it's gonna happen in most cases, I think, that the IRS doesn't know what the taxpayer has and the taxpayer doesn't know what the IRS has. So why shouldn't we remand for the district court to have an evidentiary hearing to suss out what you already possess, what you need, and then just order or enforce the summons for what you don't possess already? Well, number one, that's sort of inconsistent with the summary nature of an enforcement proceeding. Number two, I think that argument is pretty much foreclosed by the court's decisions in Liberty Financial, Action Recycling, and Luther. Number three, you know, there's a reason why they wanna look at what the IRS has, because they're the person under investigation here. And so they wanna know what the IRS has. They have, in a separate proceeding in the D.C. Circuit, they asked for, you know, under the Freedom of Information Act, this exact information, and the D.C. Circuit held that they couldn't have it because it would permit them to reveal... What authority do you have on your first point, that these are supposed to be summary in nature, and so that would be, you know, contrary to the nature of these proceedings? Just that general language in Powell, or what are you relying on for that point? Yeah, I mean, well, so Donaldson is a case that discusses the summary nature of a proceeding. I think Clark itself, in its sort of preamble to the discussion, is, you know, these are to be summary in nature. They're analogous to a grand jury proceeding. You know, the IRS issues thousands of these a year. These are sort of a bread-and-butter way that the IRS gathers information from taxpayers to substantiate what's on there. So are you suggesting that if we were to remand for a hearing that would take a lot of time, and if that were to happen in 10% of your cases, the IRS investigative arm would be ground to a halt? Yeah, well, it would bog down this case, number one. It's likely to come up in a lot of cases, because, like I said, in most cases, the IRS doesn't know exactly what the taxpayer has, and in most cases, the taxpayer doesn't know exactly what the IRS has. And in all of those cases, the government is required to furnish, you know, an open book. Here's what we have in our investigation, and provide it to the subject of that investigation, and then the subject of that investigation, you know, comes forward with everything they have, and then the district court goes through all of those and sees, all right, well, these are duplicated, so you don't have to provide these, but these aren't duplicated, so you do provide these. I don't know how that protects it. I don't think the district court would be happy with that. I don't think district court would be happy with that. I don't think that serves any statutory function, which is to prevent unnecessary examinations. You do have the CRRSCLA report. Sir, am I pronouncing it right? CRRSCLA, how do you pronounce it? How do you pronounce that? I think it's, I think the C-H in Italian is a hard one. CRRSCLA, CRRSCLA, yeah. CRRSCLA, thank you. You have that report. Do we know what information is in that report? We have what we think is the report itself. You're not sure you have the report? Well, no, we have what looks like a report. I mean, I haven't seen the report, but the testimony of the revenue agent was that they came into possession of that report from a source that the IRS simply doesn't want to disclose and has pretty good reasons why it doesn't want to disclose. But the report itself references a lot of attachments and it's embodied in a larger trial, which we don't have all of the... So what gives you reason to believe that Mr. Agrama has the trial records? Well, we're asking for the trial records that he does have. So if there are trial records that he doesn't have, then he would not provide those. But my understanding is that generally, if you're the defendant in a criminal trial, you'll retain records relating to that trial. So I mean, our expectation is that they have the records that were relating to that trial. What's your concern about Mr. Agrama or any taxpayer knowing what documents the IRS possesses? Do you think it's going to hinder your investigation in some way? Yeah, well, like I said, all of this came up before the D.C. Circuit and D.C. Circuit said providing this information to Agrama might reveal the scope and direction of the investigation, allow Agrama to destroy or alter evidence, fabricate alibis, and intimidate witnesses. So those are our concerns. Our concerns is protection of witnesses. Our concerns are not revealing investigative tactics simply because we confess that, yeah, we have some of the documents, but we would like a complete set. And every court that has considered this particular case has said, well, the IRS, as long as it's necessary, and I think we've shown that it's necessary for us to get a copy of materials related to criminal tax evasion trials to which Mr. Agrama was a defendant, then there's no hearing that you get where everybody rolls out, all right, what does everybody have, and the district court sorts through everything. And I think... Would it even be possible for the district court, simply by comparing document against document, to know what information the IRS might extract from those documents? What information the IRS had? Right. I mean, the information the IRS could be looking for is wondering, do we have a complete set? Right? Do we have all the documents? Do we have all the documents that were provided to Agrama? That's information, you know, we would want to see. And so there might be complete overlap between the documents, but we would still want to know the information there, which is, do we have a complete set? Do we have everything? How do you distinguish the Sixth Circuit ruled against the IRS? How do you distinguish that Monumental Life Insurance case? Because I think you said everyone agreed with you. I assume you meant just on evidentiary hearing, because they didn't all agree with you on your interpretation of the third power factor. Yeah, Monumental Life is a little bit of an outlier. And the facts of that particular case are escaping me at the moment, but the facts of the case are escaping me right now. But... There's a similar case in that the IRS did not dispute that it already had the documents, but it claimed it did not possess them in a form that it can employ in the investigation because of the confidentiality requirements. Oh, that's right. That's right. That was the 6103 case. So why shouldn't we follow that decision? Well... Because, you know, that involved specific confidentiality requirements that aren't present here. You know, it's a Sixth Circuit case. We have Ninth Circuit precedent on point. And so I think you're bound to follow the precedent of the Ninth Circuit ahead of what is admittedly an outlier. I mean, there are Fourth Circuit cases. There are First Circuit cases. There are plenty of cases that we cite in our brief that are contrary to the overarching idea of the Sixth Circuit case. I do see that I'm out of time, so I just want to, if I could just wrap up really quickly. You know, this very same district court judge that presided over the search 17 years ago is the district court judge that ordered the summons enforced here. You know, all the material was returned to the taxpayer. None was provided to the IRS or to the Italian prosecutor. He may have been exposed to something for 10 minutes, but there's no reason to believe, and they were given knowledge of exactly what was potentially compromised. There's no connection between those materials and anything that happened in Hong Kong, you know. And, you know, again, if this were a grand jury case, there would be no resistance whatsoever to producing these documents under these circumstances. And for those reasons, the decision of the district court is correct and should be affirmed. Thank you. All right. Thank you, counsel. Mr. Lane, I'll give you two minutes. Thank you, Your Honor. I have four points I'll try to get through quickly in that time. The first is this notion that the proceedings were to be summary and therefore we shouldn't have a hearing and the hearing would be burdensome for the district court is just nakedly contrary to the Clark. The Supreme Court said the proceeding is summary in nature. And then at 254, it says, therefore, the balance we have struck in our cases is the following rule as part of the adversarial process concerning the summons's validity. The taxpayer is entitled to examine an IRS agent when he points to specific facts, plausibly raising an inference of bad faith. Taxpayer may test any issue that bears on the validity of the summons, including the purpose for which it was issued. This is all fair game and is what the Supreme Court contemplated. And the specific facts that you've pointed to are? The ones I've recited, but I'll give you some additional ones. The violation of the tax treaty is another grounds for not enforcing the summons, another basis for viewing this as an abusive judicial process. The government said that it got the document from an attache. The attache is not a designated authority on the treaty. The government doesn't dispute that. And the government here is trying to circumvent that. If the government wanted these documents, it could go to Italy and ask for them or could go to the original source countries and ask for them. Italy can request consent from Hong Kong. It can request consent from Ireland. As far as we know, the United States has never made those requests, but it could have done that to get these documents. Instead, it's trying to undermine the promises that Italy made to those other countries that these documents would not be used for any purpose other than the Italian prosecution of a grama. The secret report that the IRS obtained in violation of the tax treaty is not of the initiation of the investigation.  We're saying of the current scope and focus, the IRS issued penalties based on the Corsicla report. The IRS is seeking documents that it believes it does not have but wants because of the Corsicla report. That is driving what it is pursuing here with this summons. With that, nothing further. Thank you. All right. Thank you very much, counsel. United States versus a grama will be submitted and we'll take up Alexander versus Diaz.
judges: WARDLAW, KOH, UNKNOWN